## PERRIS v. PERRIS.

No. 7207.  Decided February 7, 1949.  (202 P. 2d 731.)

See 49 C. J. S., Judgments, sec. 485; 5 Am. Jur. 368. Means of enforcing attorney's retaining lien, note, 111 A. L. R. 487.

*Jensen & Jensen,* of Ephraim, for appellant.

*Eldon A. Eliason,* of Delta, for respondent.

LATIMER, Justice.

This is an appeal from an order of the Judge of the Fifth Judicial District Court directing the clerk of the court to pay the sum of $300 to Eldon A. Eliason, plaintiff's attorney. This sum of money has been deposited by plaintiff as security for such costs and charges as might be awarded against him, in an action brought to recover the care and custody of his two minor children.

On March 9, 1945, plaintiff, a resident of California, was awarded the sole care and custody of his two minor children by a decree of divorce issued out of one of the superior courts of that state. On May 7, 1945, he commenced an action in the district court of this state demanding that the decree of the California court be enforced and that the defendant be required to relinquish her control of the two minor children. The defendant counterclaimed demanding the following relief: The care and custody of the children; a reasonable monthly sum for the support and maintenance of the children; a reasonable attorney's fee; costs of the action, and such further relief as the court should deem just and equitable. Prior to a trial on the merits, the defendant made a demand upon the plaintiff for security of costs as required of nonresidents. In lieu of the statutory nonresident cost bond plaintiff deposited $300 in cash. Thereafter, the principal cause was heard and on June 11, 1946, the court entered its decree awarding the custody and control of the children to the defendant. The court further ordered plaintiff to pay the defendant $50 per month for the support and maintenance of the children. Costs were not awarded to either party.

On March 10, 1947, defendant commenced supplemental proceedings against plaintiff by filing an affidavit stating that he had failed to make the monthly support payments as decreed by the court, except for the sum of $20; that there was a sum of $380 then due and owing from the plaintiff; and, that defendant was informed and had reason to believe that plaintiff had been employed continuously from the date of the decree, but that he had declined and refused to make monthly payments to her for the support of the minor children. Defendant, as part of her pleadings, in the supplemental proceedings, prayed that plaintiff be required to show cause why he should not be punished for contempt of court and why judgment for $380 should not be rendered against him. The court issued its citation and order to show cause which was personally served upon the

plaintiff in California and upon his attorney in this state. Neither the plaintiff nor his attorney appeared on the date set for the hearing on the order to show cause, and after hearing defendant's evidence, the court rendered judgment against plaintiff in the sum of $350. While this judgment was entered on the 28th day of April, 1947, notice of the entry was not served upon plaintiff until August 12, 1947.

On August 4, 1947, the plaintiff executed a written instrument whereby he assigned all his right, title, and interest in and to the $300 to Mr. Eliason, his attorney, for professional services rendered in the original action. Apparently the clerk of the court would not release the money without a court order, so on November 10, 1947, the attorney filed the assignment with the clerk. On December 15, 1947, in open court and in the presence of counsel for defendant, Mr. Eliason made a motion that the clerk be directed to pay the cash over to him. Defendant's counsel thereupon stated that he would resist the motion and on behalf of the defendant, he moved the court to direct the clerk to deliver the $300 to the defendant in partial satisfaction of the judgment for $350 rendered against the plaintiff. On February 17, 1948, the district judge signed an order directing the clerk to pay the $300 over to the plaintiff's attorney. Thereafter, defendant filed a motion to recall and vacate that order. A subsequent hearing was held on this motion, and the court refused to vacate the order. It is from the order directing the clerk to pay the $300 over to Mr. Eliason that the defendant has appealed. Her various assignments of error may, for clarity and convenience, be discussed under two principal issues.

The first of these arises out of defendant's contention that the court could not proceed to determine the ownership of the $300 in the absence of pleadings making plaintiff's assignee a party to the proceedings, as the right to the fund was disputed, and the issues could not be determined without all parties being required to set up their respective claims. This argument might have force if the defendant had

established any right to proceed against the fund. However, we believe her contention is based primarily on an erroneous view of the nature of the cost bond required of a nonresident. The statute which authorizes the right to demand security for costs from such a person is Section 104-44-17, U. C. A. 1943, and it in part provides as follows:

"When the plaintiff in an action resides out of the state, or is a foreign corporation, security for the costs and charges which may be awarded against such plaintiff may be required by the defendant. When required, all proceedings in the action must be stayed until an undertaking executed by two or more persons is filed with the clerk, to the effect that they will pay such costs and charges as may be awarded against the plaintiff by judgment or in the progress of the action, not exceeding the sum of $300. * * *"

Defendant has argued that the word "charges" as used in the statute includes an award based on the liability of a father to support his minor children and that the court's decree that the plaintiff pay $50 per month for their support rendered the deposit of $300 subject to the decree for payment of such amounts as might remain unpaid. The word "charges" has acquired many legal meanings so that when taken from context it is difficult to define. However, the difficulty is largely removed if the context in which it appears indicates the particular meaning to be ascribed. In dealing with this subject, 50 American Jurisprudence, section 247, states the general rule to be as follows:

"The meaning of statutory terms depends upon the connection in which they are used, and in the interpretation thereof, the doctrine of construction, noscitur a sociis, prevails. Hence, the meaning of particular terms in a statute may be ascertained by reference to words associated with them in the statute. Where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other. It is also a familiar policy in the construction of terms of a statute to take into consideration the meaning naturally attaching to them from the context, and to adopt that sense of the words which best harmonizes with the context. * * *"

Chapter 44 of Title 104 is entitled "Costs." The section of the Chapter here in question, namely, 104-44-17, is entitled "Nonresidents and Foreign Corporations to Give Security for Costs on Demand." Although the phraseology of the statute includes the term "costs" and "charges" so presumably the legislature intended some meaning to be given the term "charges" not identical to the meaning to be given the word "costs," still the use of the term in a section of the chapter on "Costs" indicates a legislative intent to restrict the definition of the word to include those charges consistent with the subject matter of the chapter. The authorities define the term "charges" in this connection as being some what larger in scope than the term "costs." Black's Law Dictionary, Third Edition, defines the word "charges" as follows:

"The expenses which have been incurred or disbursements made in connection with a contract, suit, or business transaction. Spoken of an action, it is said that the term includes more than what falls under the technical description of 'costs.'"

Accepting the foregoing definition of the word, we are unable to determine how any charges were awarded against plaintiff. The record bears out respondent's contention that neither party was awarded his or her costs. Moreover, nowhere in the record does it show, and defendant does not assert, that she incurred liability for any charges for which she can now be reimbursed. Rather she seeks to have us declare that the cost bond was given as security to satisfy her judgment. To so declare would do violence to the wording of the statute and would offend against the principle that all parties should have reasonably free access to the courts of the state, even though they are unable to secure payment of a judgment that might be rendered against them. In this particular instance defendants claim did not arise by virtue of incurring liability, but because she counterclaimed and asked for affirmative relief. As a result of the prayer in her pleadings, she was awarded the sum of $50 per month for support money.

This was a judgment in her favor and was not an expense incurred in connection with the suit. The wording of the statute precludes any reasonable contention that the legislature intended to require a nonresident plaintiff to insure satisfaction of a judgment to the extent of $300 before he could prosecute an action in this state. The intent of the legislature, as we glean it from the act, is to require nonresident plaintiff to indemnify the defendant only against those expenses incurred as a result of being sued and not to secure or make certain to citizens of this state that the benefits obtained from a favorable judgment will be realized. The costs and charges dealt with in the section are those which can be included in a memorandum of costs and disbursements and assessed by the court as taxable costs, separate and apart from the principal judgment. No award for costs and expenses having been made to the defendant in the action, her contention that the fund secured her judgment for support money must fail.

The next issues concern the effect and priority of defendant's judgment for $350. Two dates are of distinct importance in this phase of the case as they determine the priority of the claims. Defendant obtained her judgment on April 28, 1947, but failed to serve notice upon plaintiff until August 12, 1947. Prior to this latter date and on August 4, 1947, plaintiff assigned his right to the deposit to his attorney. In spite of her having obtained a judgment in April, 1947, defendant made no effort to subject the money to the judgment until a motion was made in court on December 15, 1947. This was long after plaintiff's assignment had been executed and the ownership of the money transferred to the attorney.

In view of the fact that the cash was deposited for the specific purpose of securing costs, it could not be subjected to a judgment, except for costs, without some act on the part of the defendant. Assuming, without deciding, that defendant could by summary proceedings resort to the fund to satisfy her judgment, the steps neces-

sary to render the fund subject to the judgment should have been taken while the plaintiff still owned the fund. After a bona fide transfer of the property the court could not deal with the money as though it belonged to plaintiff. In this particular instance, the right to transfer the money vested in plaintiff at the time of the assignment and until such time as plaintiff's rights to transfer the fund had in some way been limited by the court, he was free to deal with the money as he saw fit. When the court failed to grant the defendant a judgment for costs in the original action, the limitations on withdrawal or transfer of the fund were removed and plaintiff was in a position where he could insist the money be returned to him or he was free to transfer his rights to another. Defendant, in not having taken action to acquire a right to proceed against the fund until after plaintiff had parted with his interest, is precluded from asserting any interest therein paramount to that established by the assignee.

In connection with disposing of this issue we express no opinion as to what rights defendant might have asserted to the fund had there been appropriate pleadings alleging fraud, deceit, lack of consideration for the assignment or a transfer to defraud defendant or any issue involving the good faith of the assignee. These matters are not before us in this action, and we, therefore, leave open the rights of the parties under such circumstances.

Appellant questions the validity of the assignment to Mr. Eliason upon two grounds, namely: (1) that the acknowledgment of the signature was made by Mr. Eliason himself; (2) that the instrument contained no title of the court or cause or a verification as required by the provisions of Section 104-12-1, U. C. A. 1943. The first of these contentions must be overruled in view of the fact that an assignment for the transfer of personal property need not be acknowledged or verified. Conceding that the verification has no validity, it does not invalidate the assignment. Likewise, the second contention must be over-

ruled in view of our holding that it was unnecessary for Mr. Eliason to institute a suit in order to establish his right to the money. The validity of an assignment does not depend upon it being captioned in a court or in a cause.

The other assignments of error made by appellant have been examined, and have been found to be without merit. The judgment of the court below is affirmed. Costs to respondent.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.